## Ex parte SCOTT.

No. A-11415.   May 24, 1950.

(219 P. 2d 249.)

A. Francis Porta and Vincent Harper, El Reno, attorneys for petitioner.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., attorneys for respondent.

JONES, P. J.   The single proposition presented by this action is whether one held in custody by reason of his arrest on a warrant issued by the Governor of Oklahoma for extradition to the State of Georgia, to answer a prosecution there pending against him for the alleged crime of issuing "bogus checks," may introduce evidence that the prosecution in the demanding state is made in bad faith and for the purpose of collecting a civil debt.

Prior to the passage of the Uniform Criminal Extradition Act by the Oklahoma State Legislature on March 25, 1949, 22 O.S. Supp. § 1141.1 et seq., this court had uniformly held that the question of the good faith of the prosecution was always open to inquiry on habeas corpus.   Ex parte Welborn, 69 Okla. Cr. 282, 102 P. 2d 624; Ex parte Cassel, 85 Okla. Cr. 4, 184 P. 2d 467.   In the case of Ex parte Birch, 89 Okla. Cr. 417, 209 P. 2d 510, 512, which was an action by one sought to be extradited to another state wherein the contention was made that the prosecution was in bad faith or maliciously inspired, this court stated:

"The evidence herein was not clear, convincing, and without doubt, that the prosecution was in bad faith, or maliciously inspired.

"In addition, we call attention to the fact that at the Twenty-Second legislative session, House Bill Number 37 known as the Uniform Criminal Extradition Act was passed with the emergency clause attached and approved by the Governor of Oklahoma, on March 25, 1949, 22 O. S. Supp. § 1141.1 et seq.   At the time of the institution of this action it was in full force and effect.

"Among other provisions of said act, it is provided: 'The guilt or innocence of the accused as to the crime of which he is charged may not be inquired into by the Governor or in any proceedings after the demand for extradition accompanied by a charge of crime in legal form as above provided shall have been presented to the Governor, except as it may be involved in identifying the person held as the person charged with the crime.' 22 O.S. Supp. § 1141.20.

"Although it is unnecessary that we construe this section of the statute, under our view of the evidence we cite the same for the reason that apparently the Legislature has forbidden the courts in any proceeding from inquiring into the guilt or innocence of the accused, except as such matter may be corollary to the question of identification of the person held to await extradition as being the person charged with the crime in the demanding State."

A large number of the states in the Union, including the States of Georgia and Oklahoma, have adopted the Uniform Criminal Extradition Law. Under the provisions of this act, the prosecuting attorney of the demanding state must certify that in his opinion the ends of justice require the arrest and return of the accused for trial, and that the proceeding is not instituted to enforce a private claim. 22 O.S. Supp. § 1141.23. All of the extradition papers in the instant case are regular in form, including the affidavit by the prosecutor required by the provisions of the Uniform Criminal Extradition Act.

The petitioner admits that all of the papers in this proceeding are regular on their face, but bases his claim for release from confinement on the proposition that the only purpose of the attempt to remove the petitioner to the demanding state is for the purpose of attempting to force the payment of a private debt arising out of the purchase of an automobile. Petitioner offered to show

by competent proof that the prosecution was instituted solely to embarrass the petitioner and to aid in the collection of a private debt. The Attorney General objected to the admission of such evidence on the ground that since the adoption of the Uniform Criminal Extradition Act this court is not authorized to inquire into the motives behind the prosecution in the sister state.

We are of the opinion that the Attorney General was correct in this contention. Insofar as we have been able to ascertain, all of the states having the Uniform Criminal Extradition Act have steadfastly adhered to the rule that on the hearing of a habeas corpus sued out for the liberation of one who is sought to be extradited for the violation of the criminal laws of another state, upon a warrant of the Governor, issued upon a requisition of the demanding state, it is not admissible to hear evidence upon or to inquire into any of the motives or purposes of the prosecution. Barranger v. Baum, 103 Ga. 465, 30 S.E. 524, 68 Am. St. Rep. 113; Ullom v. Davis, 169 Miss. 208, 150 So. 519; Spiak v. Seay, 185 Va. 710, 40 S.E. 2d 250; State v. Gregg, 68 Ohio App. 397, 40 N.E. 2d 167; In re DeFoe, 179 Or. 334, 170 P. 2d 383; also see annotations in 94 A.L.R. 1487.

In State v. Gregg, supra, it was stated:

"The question presented in this case is whether or not in a habeas corpus action in an extradition proceeding, evidence that the prosecution was in bad faith and for the purpose of collecting a civil debt is admissible.

"Prior to its repeal by the Uniform Criminal Extradition Act by the General Assembly of Ohio, on April 29, 1937, Sec. 110, G.C., relating to extradition, provided: 'The demand or application must be accompanied by sworn evidence that the party charged is a fugitive from justice, and that the demand is made in good faith

for the punishment of crime and not for the purpose of the collection of debt or pecuniary mulct * * *.'

"While Sec. 110, G.C., was in effect there were decisions in Ohio holding that evidence as to the motive and good faith of the prosecution would be received in a habeas corpus action.

\* \* \* \* \* \*

"Sec. 110, G.C., as stated, was repealed when the new extradition law was passed which is now found in Sec. 109-1 to 109-32, inclusive, G.C.

"The Uniform Criminal Extradition Act in effect in Ohio does not contain old Sec. 110, G.C., or any similar provision. Counsel for Mrs. Gregg, at the hearing, contended that Sec. 109-23, G.C., reenacts the substance of old Sec. 110, G.C. An examination of Sec. 109-23, G.C., shows that it applies only to what the application of a prosecuting attorney in this state to the Governor of Ohio must contain when extradition is sought from another state, of a person charged with crime in this state. Sec. 109-23, G.C., provides that such an application must contain a statement to the effect that 'the proceeding is not instituted to enforce a private claim.'

"New York has also enacted the Uniform Extradition Law and the statutes of New York contain a similar provision to Sec. 109-23, G.C.

"In compliance with such provision, the District Attorney of New York County, in his application to the Governor of New York to issue a requisition on the Governor of Ohio in this case, certified as follows: 'That this application is not made for the purpose of enforcing the collection of a debt, or of avoiding the penalty of a bail bond, or for any private purpose whatever, and that if the requisition applied for be granted, the criminal proceedings shall not be used for any of said purposes.'

"It is our opinion that whatever the law may have been previous to the repeal of Sec. 110, G.C., evidence as to the motive or good faith of a prosecution is not now

admissible in a habeas corpus proceeding in an extradition matter in Ohio.

"This is in accord with the great weight of authority in this country and the decisions of the Supreme Court of the United States. In Drew v. Thaw, 235 U.S. 432, 35 S. Ct. 137, 138, 59 L. Ed. 302, Mr. Justice Holmes, referring to extradition proceedings, said: 'There is no discretion allowed, no inquiry into motives.'"

In Spiak v. Seay, supra, the Supreme Court of Appeals of Virginia stated:

"Here we have no question as to the identity of the person. The plaintiff in error, who is a fugitive from justice, so far as this record is concerned, admits that he obtained the $9,000 from Blackwell in California, but claims it to have been a loan. The crime charged in the indictment and disclosed in the affidavit is that Spiak obtained from Blackwell, under false pretenses, the sum of $9,000. He may or may not be guilty of the offense charged by California. This is no concern of ours. No doubt that issue will be resolved in California. Our duty is ended when we ascertain, as we have, that the papers are in due form and properly authenticated, and that there has been full compliance with all of the constitutional and statutory requirements.

"The prosecution in California may or may not result in Blackwell's collecting the $9,000. This, if he is successful, would be purely an incidental matter. The primary consideration is that the criminal offense charged is against the laws of California. The State, in the criminal prosecution, will not be interested in the collection of the debt by Blackwell, if it be purely a debt. When its criminal laws shall have been vindicated its interest will cease. The motive for the prosecution is not material.

\* \* \* \* \* \*

"When a requisition is made it is the act of a sister State having equal sovereignty to our own, and not the act of some creditor or person holding a selfish private motive who may have instigated the prosecution.

"The application for the requisition represents that it is made in good faith and not for the purpose of collecting a debt or for any other private purpose. This is in conformity with the Uniform Criminal Extradition Law which, as we have seen, has been adopted by Virginia. See Code, section 5070w(a), Michie, 1942." [185 Va. 710, 40 S.E. 2d 253]

In the case of In re DeFoe, supra, the Supreme Court of Oregon stated:

"Both California and Oregon have enacted the Uniform Extradition Act, one section of which comprises Section 26-2620, Vol. 3, O.C.L.A., and section 1553.2, Penal Code of California 1937.

"While the California statute differs slightly from the Oregon statute, its meaning is the same.

"The Oregon statute is as follows: 'The guilt or innocence of the accused as to the crime of which he is charged may not be inquired into by the governor or in any proceeding after the demand for extradition accompanied by a charge of crime in legal form as above provided shall have been presented to the governor, except as it may be involved in identifying the person held as the person charged with the crime.'

"Section 20 of the Uniform Criminal Extradition Act is identical with the above-quoted statute.

\*    \*    \*    \*    \*    \*

"Whether the prosecution of plaintiff is actuated by malice or in good faith, merely presents a question of credibility to be accorded to or withheld from the testimony of the prosecutrix; and in effect bears exclusively upon the guilt or innocence of plaintiff." [179 Or. 334, 170 P. 2d 388]

It is our conclusion that the only possible effect of permitting one held to await extradition to the demanding state to show the motives of the private parties interested in the prosecution on habeas corpus would be

to show the guilt or innoence of the accused, and under the provisions of the Uniform Criminal Extradition Act hereinabove quoted this court may not make such inquiry.

The writ of habeas corpus is denied.

BRETT and POWELL, JJ., concur.